IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-134

 No. 124A21

 Filed 5 November 2021

 IN THE MATTER OF: I.P.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 15

 February 2021 by Judge J.H. Corpening, II in District Court, New Hanover County.

 This matter was calendared for argument in the Supreme Court on 30 September

 2021 but determined on the record and briefs without oral argument pursuant to Rule

 30(f) of the North Carolina Rules of Appellate Procedure.

 Garron T. Michael for petitioner-appellee.

 No brief filed for Guardian ad Litem.

 Richard Croutharmel, for respondent-appellant.

 MORGAN, Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights to “Ivey,”1 a minor child born on 27 November 2018. After careful

 review, we hold that there was no error in the trial court’s determination that grounds

 existed to support the termination of respondent-father’s parental rights to Ivey and

 there was no abuse of discretion in the trial court’s conclusion that it would be in

 1 We use a pseudonym to protect the identity of the juvenile and for ease of reading.
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 Ivey’s best interests to terminate respondent-father’s parental rights. Accordingly,

 we affirm the trial court’s order terminating respondent-father’s parental rights to

 Ivey.

 I. Factual and Procedural Background

¶2 Prior to Ivey’s birth, all of her older siblings had been taken into nonsecure

 custody by the New Hanover County Department of Social Services (DSS), with Ivey’s

 mother eventually relinquishing her parental rights to each of these children. Ivey

 tested positive for cocaine at her birth on 27 November 2018 and was taken into

 custody by DSS. Ivey’s mother identified three men as possible fathers of Ivey; one of

 them was respondent-father. On 11 December 2018, DSS filed a juvenile petition

 alleging that Ivey was a neglected juvenile. Following a hearing conducted on 31

 January 2019 and by order filed on 25 February 2019, the trial court adjudicated Ivey

 to be neglected. On disposition, the trial court ordered Ivey’s mother to comply with

 a case plan to effect reunification with Ivey and ordered the putative fathers

 identified by Ivey’s mother to submit to DNA testing in order to confirm the identity

 of Ivey’s biological father.

¶3 On 30 May 2019, the trial court adjudicated respondent-father as Ivey’s

 biological father. At a hearing held on 3 October 2019 and in an order entered on 13

 November 2019, the trial court directed respondent-father to comply with a case plan

 to effect placement of Ivey with him. The trial court changed Ivey’s primary
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 permanent plan to adoption after an 8 July 2020 hearing and the entry of a 22 July

 2020 order. Ivey’s mother relinquished her parental rights to Ivey on 10 July 2020.

 On 1 September 2020, DSS filed a petition to terminate respondent-father’s parental

 rights to Ivey. Following a hearing conducted on 26 and 29 October 2020 and by an

 order filed on 15 February 2021, the trial court terminated respondent-father’s

 parental rights to Ivey. In its termination of parental rights order, the trial court

 found that three grounds existed to permit the termination of respondent-father’s

 parental rights: neglect under N.C.G.S. § 7B-1111(a)(1), willful failure to make

 reasonable progress to correct the matters which caused Ivey to be in an out-of-home

 placement for at least 12 months under N.C.G.S. § 7B-1111(a)(2), and abandonment

 under N.C.G.S. § 7B-1111(a)(7). Respondent-father appeals.

¶4 On 17 June 2021, appellate counsel for respondent-father filed a brief, stating

 that “[a]fter a conscientious and thorough review of the record and the relevant law

 and consultation with other experienced appellate attorneys, [appellate counsel for

 respondent-father was] unable to identify any issues with sufficient merit on which

 to base an argument for relief on appeal.” Pursuant to N.C. R. App. P. 3.1(e), appellate

 counsel for respondent-father identified two general issues for this Court’s review

 that might potentially support relief on appeal. Appellate counsel for respondent-

 father also sent to respondent-father copies of counsel’s brief, the record on appeal,

 and the transcript, along with a letter explaining respondent-father’s right to file his
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 own pro se brief and instructions on how to do so. Respondent-father did not submit

 his own brief or any other filing to the Court.

¶5 The brief filed in this Court by appellate counsel on behalf of respondent-father

 only analyzes the ground for termination of parental rights found under N.C.G.S. §

 7B-1111(a)(2)—failure to make reasonable progress—as a sufficient basis for the

 termination of respondent-father’s parental rights. The trial court made the following

 findings concerning respondent-father’s failure to make reasonable progress:

 129. That the Court finds that Respondent-Father lacks
 credibility.

 130. That the Court finds that Respondent-Father clearly
 fabricated his pay stubs and lease. The lease is suspect at
 best. The Court struggles to believe that this is a lease for
 that address.

 131. That the Court finds that Respondent-Father’s
 testimony about the quality of his visits with [Ivey] are not
 credible.

 ....

 134. That this Court questions anything said by
 Respondent-Father and any documents provided by
 Respondent-Father.

 135. That Respondent-Father is unfit to parent and is
 acting contrary and contradictory to his parental rights.

 136. That this Court has no confidence that things will
 change any more than they have in the past twenty-three
 months that the child has been in care.

 137. That Respondent-Father is not in a position to parent
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

[Ivey] almost two years after she came into care and at
least eighteen (18) months since he learned that he was her
biological father.

....

146. That Respondent-Father has made periodic progress
on his case plan but cannot remain consistent nor has
addressed his significant mental health issues.
Respondent-Father is partially compliant, at best, after
two years and instead of focusing on completing the
objectives of his case plan spent more time creating a
façade of progress.

147. That the concerns that originally brought [Ivey] into
care remain unaddressed by Respondent-Father. He lacks
understanding of the detrimental effects of his decision-
making and its lasting effects on [Ivey]. Respondent-Father
has not complied and has failed to actively engage in most
services designed to address the issues of neglect that
brought [Ivey] into care and support reunification efforts.
Respondent-Father continues to have ongoing and
longstanding issues that impact the care and supervision
of the child. He disengaged from his child for the first year
of her life and then after three visits, disengaged with her
again until the plan changed to adoption and the [TPR]
Petition was filed.

148. That Respondent-Father has not made reasonable
progress in correcting those conditions which led to the
removal of the minor child based on his conduct. . . .
Respondent-Father’s lack of credibility does not show
progress in being able to parent this child safely as
Respondent-Father continues to put his needs ahead of
hers.

....

151. That Respondent-Father is not in a position to parent
today. Respondent-Father would need significant therapy
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 and verified stable income and housing before he would be
 in a position to reunite with [Ivey]. Respondent-Father has
 had the luxury of additional time to complete his case plan
 with the six-month hiatus of this case due COVID-19 and
 still has not accomplished the necessary objectives to
 reunite with [Ivey]. [The social worker and the guardian ad
 litem] do not see Respondent-Father being in a position to
 safely parent or complete his recommended treatment in
 the near future and this Court agrees.

Respondent-father’s appellate counsel represents that he cannot refute these findings

of fact as they apply to the ground of respondent-father’s willful failure to make

reasonable progress to reunify with Ivey after she had been in an out-of-home

placement for at least twelve months, specifically in light of evidence in the record

that: (1) there was a question as to respondent-father’s veracity during the

termination hearing; (2) there was some doubt as to whether respondent-father had

stable employment, adequate and stable housing, and adequate and stable income;

(3) there was a question as to whether respondent-father had another newborn child

and romantic relationships with multiple women; (4) respondent-father failed to visit

Ivey from June through November 2019 and January through July 2020, with

questionable reasons for not visiting; (5) respondent-father’s failure to consistently

visit Ivey undoubtedly led to his inability to form a stronger bond with her; and (6)

respondent-father never developed the parenting skills necessary to assuage Ivey’s

anxiety in his presence despite multiple parenting classes. It is well settled that “a

finding of only one ground is necessary to support a termination of parental rights.”
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 In re A.R.A., 373 N.C. 190, 194 (2019).

¶6 After a careful review of the record on appeal in this matter, we agree with the

 candid assessment of respondent-father’s appellate counsel and with the

 determinations of the trial court in this case. As this Court has noted, “[a]

 respondent’s prolonged inability to improve [his] situation, despite some efforts in

 that direction, will support a finding of willfulness regardless of [his] good intentions,

 and will support a finding of lack of progress sufficient to warrant termination of

 parental rights.” In re J.S., 374 N.C. 811, 815 (2020) (extraneity omitted). Here,

 respondent-father has not achieved reasonable progress under his case plan and has

 not demonstrated an intention and commitment to do so. Based upon the evidence

 adduced in the trial court and upon the entirety of the record, we affirm the trial

 court’s determination that grounds existed under N.C.G.S. § 7B-1111(a)(2) to support

 termination of respondent-father’s parental rights.

¶7 Further, during the disposition phase of the termination of parental rights

 hearing, the trial court made findings of fact which addressed evidence concerning

 the specifically enumerated factors contained in the disposition statute, N.C.G.S. §

 7B-1110(a): Ivey’s age, her likelihood of adoption, her permanent plan, her bond with

 respondent-father, her relationship with her current caregivers, and other relevant

 considerations. The evidence showed that Ivey was adoptable and that her foster

 parents were interested in adopting her, that Ivey was bonded with her foster
 IN RE I.P.

 2021-NCSC-134

 Opinion of the Court

 parents, that Ivey did not have a bond with respondent-father, that Ivey lived in the

 foster home with a half-sister, and that the foster parents encouraged the paternal

 grandmother to bring Ivey’s half-brother to the foster home so that Ivey could visit

 with him. This evidence amply supported the trial court’s determination that

 termination of respondent-father’s parental rights was in Ivey’s best interests.

¶8 For the aforementioned reasons, the trial court’s order terminating the

 parental rights of respondent-father is affirmed.

 AFFIRMED.